Page 121-1272, et al. Duke Energy Progress, LLC Petitioner versus Federal Energy Regulatory Commission. Mr. Titling for the Petitioner, Mr. Stella for the Respondent, Mr. O'Connor for the Intervener. Good morning. Thank you, Your Honor. I'm Isha Titling for Duke Energy Progress. In this case, FERC rejected our affected system operating agreement because that agreement did not require us, and thus our customers, to pay for upgrades necessitated and caused entirely by the needs of customers of a different utility. This Court should vacate FERC's orders under review for three independent reasons. First, and most obviously, the FERC orders here flout this Court's decision in Baltimore Guess. In Baltimore Guess, this Court held that the principle that FERC cannot treat a utility worse than similarly situated utilities without giving you a principal justification applies even when you're dealing with FERC staff orders, even where the FERC staff orders were uncontested at the time. Here, it is undisputed that FERC has approved multiple affected system operating agreements without the reimbursement requirement they faulted us for not requiring. It is uncontested that those utilities are identically situated in all relevant respects to us. FERC did not address at all or explain in any reasoned way why it is fair to allow those utilities to not pay the reimbursement, but why we have to pay the reimbursement. That alone is clear error under Baltimore Guess and reason enough to reverse the orders on review. Second, even if this Court wants to go beyond Baltimore Guess, and I think the Court need not given how clear that error is, those prior orders, those were correct. The only basis that FERC gives for rejecting our affected system operating agreement is that it somehow violates Order 2003, but Order 2003 only imposes obligations through a provision, Section 11.4 of the Large Generator Interconnection Agreement. Now, let me ask you about this, because it seems like this argument that you're making now is in tension with the concession that you made in the FERC proceedings, which is noted at JA268, which is the Well, no, this isn't the October 2021 order. This is the EDGECOMB order, footnote 48. But at any rate, the same thing was pointed out in the October 2021 one, which was that when you filed a motion to dismiss in the agency proceedings of the EDGECOMB, the first EDGECOMB, I guess, action, I don't know the right terminology for all of these things in FERC. You agree that Order 2003 requires affected system operators to reimburse affected system customers for affected system network upgrade costs they pay up front. You agree that you said that in that proceeding, right? I believe that footnote is referring to something we said in a different proceeding. In the first EDGECOMB proceeding that got dismissed as unright, you said that. We certainly never took the position that when an affected system does not sign on to an LGIA, that it is bound to pay reimbursement. We never took that position. We certainly had, there were certain agreements where we I asked you whether you took the position that I just stated. You don't want to put me on the hypothetical. We have pulled the motion to dismiss off of the FERC docket. You're saying you didn't say it? You did say it. We did not take the position that No, no, no. That's not what the judge was asking. He's asking, did you state this? We can fight over what it means, but I think you said it. Well, I will take a look at that and I'll address it on rebuttal. Your answer is you don't know. We are now resting on what Judge Wilkins is, which is you did assert. We certainly never took the position in these proceedings that 11.4 applies to an affected system that is not a party to the LGIA. We did not take that position. That is what I'm saying. I will take a look at what Judge Wilkins is referring to and I will address it further on rebuttal if necessary. I'm just going to be clear here. There's no need to be coy. I've got some very tough questions for FERC here about what they're doing and whether it's reasoned decision making and whether it's consistent. And I don't think that this concession that you made is fatal to your position. But it just seems to be contrary to the point that you're arguing now, which is that, well, Order 2003 didn't really mean what it said because, you know, an affected system operator is in the party to the, you know, the pro forma interconnection agreement that's appended to the order. That's all I'm saying is that that legal argument that you're making now appears to be in tension with the concession that you made earlier. I don't think that it's a fatal concession. FERC does. I don't. But it just seems to be in tension with the position that you took previously. As I said, your honor, I believe that throughout these proceedings, we've been consistent and raising the same arguments from the beginning that if you're, if you're an effect system that you're not a party to the LGA, you don't have a 11.4 in any contract that you signed with the relevant transmission provider. You're not bound, but I will take a look at that and I will attempt to provide further elucidation on that interval. And I apologize if I'm not giving sufficient answers for that to your honor. I will say that our position is not only consistent with first actions in those in those 3 orders. It's also consistent with paragraph 25 of Midwest ISO, where they said, I mean, if you look at paragraph 25, they cite paragraph sites, paragraph 121 of of order 2003, essentially the argument that we made in the American peace proceeding and the follow on. I just can't proceed. I take I take your. Yes. And then. So, I guess. What I see here that's really troubling me and I'm get to this with FERC is that FERC says that an American beach that you lose because you didn't really explain why an exception to the reimbursement rule from order 2003. Should apply in this case, I think, in kind of lay persons. Terms. That's the way I read FERC's order and they say that you didn't really provide sufficient evidence. To to justify an exception to the rule here. Let's suppose I'm inclined to. Why is that wrong? Why is that wrong? Well, as a threshold matter, and all of those other materially indistinguishable cases, they didn't provide any more information than we did. This is an effective system. So that means that the upgrades by definition are being made just to accommodate and the needs and are caused by some other customers. Now, your customers, then we gave a dollar figure how much that is. I'm not clear what more we needed to say. I mean, this is the very definition of an effective system. You're not making upgrades for yourself. You're making it to accommodate load that is serving somebody else. Can I just understand something about the terminology? This affected system is outside the PJM interconnection area. Can there be an affected system that is within the interconnection or is the way that affected system defined? It's always outside of the interconnection area. It's always a different transmission provider. Obviously, there's different ways that various utilities and independent entities are organized. But if these folks were on our transmission lines, if they were feeding energy to us, then we would not be an effective system. Then we'd be a transmission provider. We have an 11.4 provision in our LGIA, and then we would reimburse them, but we wouldn't be an effective system. Here, we are an effective system precisely because our customers' needs are not being served by these solar plants. Those are the dominion in PJM. Is there a mechanism for – the way I understand all of this is that the system upgrade is called that because it benefits everyone within the system. That's why the entity that causes the need for the upgrade doesn't have to – is able to get reimbursed for it, for the cost of it, because it's benefiting everyone. It's not just benefiting the entity who is seeking the upgrade. The concern that I have seems to be the same one that your client had, which is that, well, if the people who are benefiting from the upgrade are the people within the PJM interconnection, why then does it look like the cost of that is going to either be borne by Duke or Duke's customers in North Carolina and South Carolina who aren't a part of the PJM interconnection and, by definition, aren't benefiting from this system upgrade? That's exactly right, Your Honor. And FERC, three months ago, was telling this court the same thing that Your Honor is saying, what we're saying in Lincoln. It was saying that it violates cost causation to force the folks in Region 19 there to pay for stuff that's not serving their customers. And what Lincoln had said in that case was, well, look, the entire network is a network, and so there are benefits. And what FERC said, and it was – I went back and listened to the oral argument from Lincoln yesterday. And what they said at time step 14 is they said these kind of general network-as-a-network benefits are not sufficient when you're dealing with cost causation. And they even cited the Seventh Circuit decision – I mean, they cited that oral argument, the Seventh Circuit decision in – I'm sorry – Illinois Commerce Commission. And they said that's what the Seventh Circuit said to us in Illinois Commerce Commission, that that's not sufficient. And they referenced that, an oral argument, in the Lincoln case. And then they come here, they come at ours, and they're saying the exact opposite. They're saying, well, a network is a network, and we're all on the Eastern Interconnect and so forth, so you get some kind of – your customers get some collateral benefits from these upgrades. To be clear, these upgrades were never going to be – were not going to be made if it wasn't for the fact that there was all these new solar generation popping up in Northeastern North Carolina to serve the PJM system. We have a connection, an air connection, with Legacy One with Dominion, and so this was overloading our system. It's not – if we didn't do those upgrades, it wasn't serving our customers in any way. So what we said is, how is that fair? And that's our third argument. And they basically said, you need to make some heightened showing for it to be relevant. Well, that flips the cost causation principle and everything this court – what FERC told this court three months ago on the Senate. It's basically saying cost causation is presumptively irrelevant for effective systems unless there's some heightened showing that FERC doesn't even explain what that is. I don't know what more an effective system can show than we're an effective system, so these upgrades are not for us. And the cost, that's $30 million, 70 percent of which is going to be put down on our retail customers and 30 percent on our wholesale customers. That's the standard showing. That's what happened in all those other cases. And I'll also mention that FERC says that Order 2003 means this. They are unable to show a single effective system operating agreement that they've ever previously rejected for not having a reimbursement requirement, not a single one. If Order 2003 means what they say, they'll be able to find some examples. In fact, every single example before this court in the record is the other way. It's that they've always accepted these agreements, even if they didn't have – when they didn't have reimbursement requirements. So we'd be the only ones that are treated worse, which is a plain violation of Baltimore gas. Can you address the mootness argument? Right, so the mootness argument only applies to our American Beach proceedings. We think the American Beach proceedings are not moot because if we obtain relief from those orders, we withdraw the edge comb affected system operating agreement that we signed. So that's injury, that's causation. That's a practical effect. That's right. What is that practical effect? The practical effect is that we wouldn't need to pay the reimbursements because there's no – there would be no – But I'm talking about in terms of the project. Well, it would not go forward until we negotiated an effective system operating agreement. Now, of course, FERC since has now issued Order 2023 that purports to have a pro forma affected system operating agreement for the first time. We challenged that on rehearing, raising a lot of the same arguments that we raised here, and so we'll see how that works out. But in the meanwhile, if we are permitted to withdraw the edge comb affected system operating agreement, we wouldn't have any reimbursement obligations. But anyway, this whole issue, you know, it's certainly obvious you want me to say something about the American Beach proceedings in your opinion, but in terms of addressing the issues that we were discussing under this court's binding precedent, the fact that we raised all of the issues in the rehearing petition in edge comb means that they're all fairly before the court. We cited four or five binding precedents from this court that say if you raise an argument that is not based on a new factual point in a rehearing petition, that that is sufficient to preserve the issue for review from this court. I don't know if FERC will even dispute that on a rebuttal, I guess, on their response. We'll see. But it seems clear that there's clear many binding cases from this court that show that. FERC has acknowledged that it has made some errors with respect to its prior decisions. With respect to Baltimore Gas, I mean, if they corrected those errors, are they supposed to go to new rulemaking or do anything different? In other words, if they corrected them, then is everything even now going forward? Or is there some specific process that you expect them to go through? They need to do two things to comply with Baltimore Gas. First, they have to admit that they're changing policy. They tried to do this hand-waving saying we've been inconsistent. That's just not true. They have not been able to point to a single effective system operating agreement in the 20 years since Order 2003 is issued that they rejected for a lack of reimbursement requirement, not a single one. So they would have to admit that they are changing policy. And having admitted that they're changing policy, then they have to explain why that's consistent with reliance interests and basic principles of fairness. Both basic principles of fairness of us vis-a-vis those utilities that were effective systems that didn't have to pay the reimbursements and also fairness with regard to our customers. Why our customers have to be the first ones since Order 2003 has been around where FERC rejects their utilities' submission of an effective system services operating agreement without a reimbursement requirement. And then FERC imposes one on them, and then they have to pay $30 million for upgrades that they would have not needed but for the needs of PJM. So American Beach withdrew from the executed agreement that was filed after – at what point did that happen? I believe they withdrew on the same – they refused to sign – they declined to sign the revised effective system operating agreement on the same day that FERC issued its order addressing arguments on restraint. So what happened is they had signed the prior one that didn't have the reimbursement requirement. We then worked with them to have one that did have the reimbursement requirement, and they decided we're not going forward or we're not going to sign it. At which point Edgecombe said we'll step into their shoes, and then we revised the agreement, which is just taking out American Beach's name, putting in Edgecombe's name, and then changing some of the dates. And then we submitted that unsigned, which is how you do it when you do something under protest, to FERC, and then we had the rest of Edgecombe proceed. They just weren't urged, but you took that as mandatory that you had to enter into a new agreement? Yes, yes. There was this language earlier in the initial October 1st order that says we have to do it. And they told us we've got to do it post-haste because they said you've been delaying this project unfairly, but that's what they said. And so you've got to do it right away. Where is this language that you're talking about that required? It was JA211. Which paragraph? 41? I'm being told my colleague 41. Okay. Thank you. All right, we'll give you some time while we vote. We'll hear from Ms. Pacella. Good morning, Your Honors. Beth Pacella for the Commission. I think I'll start with the mootness question, if that's okay. The American Beach petitions are moot because under this court's case law, the petition is challenging those orders addressing contract no longer exist. These were separate proceedings here, as the Commission found in the Edgecombe Regulatory Order. But would you nonetheless say that the issue's been preserved because it was brought up in the American Beach proceedings and kind of followed throughout? No, Your Honor, but they were separate proceedings, and let me explain that. But we're still on notice about this being an issue for them. That's not how it works. A proceeding is a body in and of itself. And just like in this court, a proceeding is a proceeding, and a separate proceeding, even if it involves the same type of issue, doesn't mean it's the same proceeding. The American Beach was dispositive of Edgecombe, and Duke was denied its preferred method. It's the same issue. It is the same issue, Your Honor. I don't dispute that. It's not moot. It's the same issue. No one is caught off guard. It's all in play. One case went to the next case, and the issue remained exactly the same. And the same affected party was now complaining before the court. This just does not fit the mootness. I feel pretty confident about our merits, so I don't want to spend a lot of time on this. But if I could just explain just one small point, contrary to that, Your Honor, is that these are separate contracts with separate parties. And that contract just doesn't exist anymore. Why doesn't it exist anymore? It doesn't exist because the commission in America—I guess your point is that the commission— had said no reimbursement requirement. That got filed. The commission struck the no reimbursement requirement provision from that contract. Right? So the only reason this isn't a live controversy anymore is what? American Beach withdrew from that contract? That contract just didn't exist anymore at that point. So why isn't it the case that that proceeding is still a live proceeding because Duke disagrees with that ruling? How did you get to just, like, vaporize the contract and then say, well, this proceeding is moot now? Because, Your Honor, a new contract, a modified contract, was presented to American Beach, and American Beach chose not to enter into that contract. If American Beach had entered into the contract— And you asked Duke to do that. Right. No, I understand that, Your Honor. I feel like they're under regulatory duress. Okay, we have to do— I understand that. All that—I'm not saying—then it would be live, and we would be defending the American Beach orders here. If that had happened, if that contract—that contract was never even presented to the court. No, but American Beach's legal disposition is at play now. Burke's position is exactly the same. Burke's position isn't exactly the same because in the Edgecombe proceeding, what the commission had before it was a contract between Duke and Edgecombe in which reimbursement was provided. So the context of the case was completely different. In the American Beach proceeding— It was provided under duress, not yet signed, was it? No, that's right. It wasn't signed. I object. The objection remained. And so, okay, you're tying our hands, but we still object. We're not going to go on with this. We want to pursue the legal objection that we started out with on Burke's case. And under this court's case law, it's not capable of repetition univading review because, as the court found in Southern Company Services and Entergy, the Edgecombe petition is live. And if that's where it can be addressed, the commission's determinations regarding what Order 2003 means— No, you're trying to suggest there was a voluntary secession. There wasn't any voluntary secession. That's what we should be looking at in the mootness doctrine. There was no voluntary secession by the agency on the rule that they are going to apply. And that's exactly what Duke is objecting to in both. You're on the wrong side of the mootness. I'll move on. I hear your point, Your Honor. So let me move on to next, what Order 2003 requires. Order 2003 requires, both in the preamble of the rule and in Article 11.4 of the Large Generating Interconnection Agreement, which the commission in Paragraph 738 of Order 2003 explicitly made applicable to all affected system operators, that reimbursement must be provided by affected systems. And this court's case law says that preambles have independent legal effects when the agency intends to bind regulated parties. And the language of the commission's rulemaking in the preamble makes that very clear. Let's assume that's right. And I get your preamble. I do not mean to cut you off. I get your preamble. I appreciate that, Your Honor. I get your preamble argument. The thrust of the argument here is you've never done this before. And you can't operate that way in a regulatory setting. No one else has been obliged to do what you are now asking us to do. And they're citing the prior case, I think it was on the panel, where the cost causation was the preeminent issue. And they're saying you've lit the focus with your interpretation of Order 2003. Are you talking about the Lincoln case, Your Honor? Okay, let me talk to you about Lincoln, which is completely the opposite here. Lincoln was involved in completely different circumstances. In Lincoln, the facilities were already existing facilities. I was on that, right? I don't know, Your Honor. So you know this. I remember it only took, like, two months. So forgive me, and let me just explain it. Of course, you can disagree with me if you want to. But that case involved legacy facilities, and legacy facilities are already existing facilities that were built solely for the benefit of specific customers. And then what happened was Lincoln wanted to now transfer its interest in those facilities to a regional operator. I think it was Southwest Power. And under the commission's opinion 494, regarding legacy facilities and how those costs are allocated, the costs needed, it was a legacy facility, so the costs would stay with Lincoln. This is a completely different circumstance. The circumstances here are under Order 2003, requirements regarding interconnection facilities and network upgrades built in order to allow the interconnection to be built. Brand new facilities. But the more compelling point, which I want to hear your response on, is they're saying, get the Lincoln case, okay? Let's assume your explanation makes sense. Yes, yes, Your Honor. This has never been required before. It's completely off the wall insofar as they're concerned, and you don't ask people to do what you're now asking us to do, and it doesn't match up well with cost causation principles. Until recently, Your Honor, no one has presented an agreement that didn't provide reimbursement. And that's because everybody understood, including Duke, for years, we're always providing agreements with reimbursement, because they understood that that's what Order 2003 required. It's only recently that anyone has brought up the notion 20 years after Order 2003, just the notion that reimbursement doesn't need to be required if the affected system doesn't enter. Let's suppose I agree with all of that, just to get to the brass tacks. Yes, Your Honor. Here's why I think you lose. Even if I accept all of that, what you said at JA 272, when I say you, your client first, paragraph 30, is that the reimbursement requirement of Order 2003 is not unwavering and sacrosanct. Kirk said that you could deviate from it, but it must be supported by the facts of the case, et cetera. Right, and that comes out of Order 2003, Your Honor. And you say that Duke has not provided such support here. You don't explain why they didn't provide that support or what they said that wasn't sufficient. I looked at their rehearing petition. I looked at the motion to dismiss that they filed of the unripe edge comb action. This whole case is about these generators hoisting their costs of the affected system upgrades on people who aren't benefiting from the upgrade. That's incorrect, Your Honor. Well, that's the argument. Well, they didn't make that argument. Well, that's the gist of the argument. That's not the gist. It's the explicit argument. That's the whole point of North Carolina intervening in this. That's here on appeal. That is not what was presented to the commission. All that was presented to the commission was people outside the PJM interconnection are the ones who are going to have to pay for this, and that's not fair. You would agree that that argument was fair, right? They don't actually say, and that's not fair, but they do say we're going to charge our existing customers for this. They said whether they said it's not fair. They said that's not right. That shouldn't be done. In North Carolina, the North Carolina State Commission intervened to express its concerns. Are you trying to tell me that FERC wasn't put on notice that the whole issue here is that people outside the interconnection shouldn't have to pay for these affected system upgrades? There's nothing in this record that talks about that there are no benefits. There's nothing in either record here that talks in which any party argued that there were no benefits. To the contrary, American Beach, their comments at JA-96 says that the network upgrades would benefit both American Beach and Duke's customers. I know that that's American Beach's argument, but you concede, don't you, that North Carolina State Utility intervened and Duke made the argument that North Carolina and South Carolina rate-paying customers who are outside of the PJM interconnection shouldn't have to pay for these system upgrades? They didn't argue that they shouldn't have to pay. What they argued was that they would have to pay, and that's all they said. They didn't say, and they shouldn't have to. They just said, we oppose this because we don't believe we should have to reimburse it. Why in the heck would they even bring it up if they didn't think that it was a problem that these other people had to pay it? Here's the point, Your Honor. I hear what you're saying, but let me explain it this way. Order 2003 talks about, and this court has affirmed this, that network upgrades generally benefit all users of the transmission system. So these upgrades are built onto Duke's system, and they are real improvements. I mean, if you look at what these are, they're taking wooden things, and they're turning them into steel, and they're replacing entire grid portions. So these are real improvements to the grid. And Order 2003 and this court's case file, it is black-letter law that network upgrades generally benefit. Maybe I can agree with that, but why couldn't it be a system then where PJM's customers pay for 50% of that upgrade, and the North Carolina and South Carolina customers outside of PJM pay for 50%? I have two responses to that, Your Honor. That was a determination made in Order 2003, and that's not before the court. I apologize. I understand that, and that's frustrating to Your Honor. But secondarily, as the commission explained in Order 2003, if an entity believed that its customers really wouldn't be, would be actually harmed, and that's in the context of having talked about how network upgrades are beneficial to the entire system, to all existing customers, then they need to come in, and they need to explain why. So what they could have shown, or tried to show, and apparently couldn't, because they never made a no-benefits argument to the commission, never, not once, even though American Beach raised the point, as I said, that these were beneficial to the customers of Duke. They could have come back and said, no, they're not here, because, again, it's only generally they're beneficial. Then they had the burden to come in and say why that's not true. And in Paragraph 2000B, Paragraph 56, the commission said, it's your burden to show why these are not – you should have a variance, because there is actual harm to your customers. And all American Beach – I mean, all Duke did was come in and say, we're going to charge these customers. And in the ISCOM proceeding, they said, we're going to roll in these costs to these existing customers. We're going to pay. That's a given under Order 2003. The commission – that's exactly what the commission held. You have to do that. And the commission did it for good reason, because non-independent transmission providers like Duke have an incentive to discriminate against new generation. But Duke says, look, American Beach, to get these upgrades done, they went before the North Carolina State Commission and said that North Carolina rate payers aren't going to have to foot the bill for this. And they made that promise. And then they come before FERC, and they essentially reneged on that. I think that that was disputed on the record here, Your Honor. The commission did not accept their dispute, because it just didn't matter. You know, the commission had the rulemaking. Where did the commission rule on who was right about that factually? The commission didn't rule on that, because it was irrelevant. It had no bearing. FERC has its jurisdiction, and the state has its jurisdiction, and the state has siting authority jurisdiction, and they can decide whether something can be cited somewhere or not. But they can't decide whether FERC's rulemaking, which was affirmed long ago, they can't go contrary to that. Well, Duke cites agreements that the commission has approved that did not have a reimbursement required. And one way that the commission deals with those is to say, well, this argument that you're making here wasn't presented in those cases. So those prior agreements aren't really relevant precedent. The commission didn't really hold that here. It did something very different here when the commission talked about that consistent precedent. The commission, it satisfied what Baltimore Gas requires, and it's very clear if you look at the energy versus FERC. Satisfied Baltimore Gas by citing Baltimore Gas with a but C? It wrote in addition. That was in a footnote and an in addition point. The commission's actual holding is in the text of the order. And the commission. Point to me a page and a paragraph, please. Oh, of course, your honor. The commission factually distinguished precedent Duke cited. And there's America Beach order 210 note 62. And it set out a distinguished precedent that was distinguishable. It then said it acknowledged as precedent was not entirely consistent regarding whether effective systems needed to reimburse interconnection customers. It pointed out, and that's an America Beach order. J210 paragraph 37 for hearing order J271 to 72 paragraph 28 to 29. It talked to it explained that some recent precedent Duke cited accepted agreements that did not provide for reimbursement. Further pointed out, but earlier commission precedent confirmed that order 2003 requires effective system operators to provide this reimbursement. So, where did the commission explain why it accepted the ones that did not require reimbursement? The commission explained that it was erroneous at the commission. The commission said the determination here, like missions earlier precedent is consistent with order 2003 is reimbursement requirements. That's American beach for hearing order J272 paragraph 29. That's the hearing order and the 1st order was J210 paragraph 37. The commission explained that order 2003 permits the commission to accept an effective system operator agreement that doesn't provide for reimbursement only. If either a generally applicable variation has been approved, like, in the Midwest case, or if the effective system operator has met its burden to show here. And these specific circumstances here that that a deviation is appropriate is necessary or appropriate in the. So, let me try and understand what you just said. To the extent that there were inconsistent agreements that had been approved. The commission said, well, those that was just wrong. Those shouldn't have been. That's exactly right. And the commission explicitly said that in the order, it explicitly made that holding. When it said, and that's that edge coma hearing order. J433 and 435 paragraphs, 39 and 42 orders that approved effective system operating agreements without reimbursement provisions were inconsistent with order 2003 unless that happened. So, that's all satisfies Baltimore gas, because you acknowledge that you had been. That the commission had been inconsistent in that it had made mistakes. And essentially the commission saying too long, don't make a right. Right. The commission reasonably followed its rulemaking. I mean, the commission can't in individual adjudications change what is rulemaking provides. So, the commission said, oops, we're not going to follow that inconsistent precedent. We're going to follow all the consistent precedent. Is there a commission site in the prior precedent? Some cases in which the showing of no benefits. Was made in the commission accepted it. No, I was trying to listen to your explanation of the prior cases. Were you saying some of the prior cases included situations where. Party came in and said, no benefits here and therefore we should not be obliged to. No, I don't know that. I'm guessing they're not relying on that. On that inconsistent precedent for mistakes, right? That's exactly right. Everybody else you say, there's 3, there's 3. Orders in which the, which in which the commission. Allowed this and there's myriad orders for decades in which. Yes, practice is consistent and an energy versus for 319 as 3rd. 536 is 541 to 42. The circumstances are very much like here. There the court found that the commission properly explained that a few orders had language and there is even worse that the orders had language contrary to the existing long standing precedent. So, the commission actually in those orders said something actually said something contrary rather just made a whole that made a quick ruling and directed language to be changed to be consistent with the long standing policy. The court found that this was just clarifying inadvertent language and prior orders that violated long standing policy here. The commission is just clarifying. Those 3 particular orders are incorrect in light of order 2003 and the court said, even if the commission's orders constituted more than a mere clarification of policy. The commission provided a reasoned explanation for its changing policy. So, 1st of all, the commission just clarified its order or 2003 rule requires here. But even if it was, if it had changed its policy, which is really couldn't those individual adjudications discussing a lot of kind of case specific deviation. But if you're being regulated, how do you know what circumstances the commission is looking at? So that you can feel like you're actually following a precedent. So, if that's a fact, he's fact specific issues. So that's, that's, that's just how it's going to be. Right? You have to show based on the facts and circumstances in a specific case. Why you're, you're, you're existing customers are actually harm. Even even though that, even with the presumption that they're beneficial, where's their guidance to the regulated party? I mean, it's just obviously looking at your prior orders, but it's, it's so case specific that I don't know that they have. I think what they have. I don't think it would be. Assuming there were something that they could say here, but all they had to do is say, here are the upgrades that are happening. They're not going to be beneficial to our. So, not only are they going to be charged, but there's no benefit again. They never made that argument to the mission, even though order 2003 repeatedly talks about that. And I could give you the sites for that. I think at least summer in my brief. But, for example, order 2003, a progress 584 to 85 and 599 order 2003 paragraphs, 2165, 694 all talk about how network upgrades are beneficial to all. All customers, not just customers for whom they're being built and that is a different. Being a commission talked about how it understood that it's, it's controversial to charge these customers for this, but the commission is doing it because it's concerned about these non independent. I'm. I mean, non independent, non independent transmission providers and. Effective systems, which are just transmission providers, just the connection interconnection is not to them. But they have this incentive to discriminate against new generation coming in and also the commission talked about, which I've talked about in my brief. The other reason is because the commission has wants to make sure that people can get new generation added onto the power system and that's beneficial generally. So we can have more generation on a system. How is that consistent? With the cost causation principle in the sense that. Affected system customers. To the extent that they, maybe they benefit from the upgrade. But if it's not really an upgrade that. They desired, or that they wanted, or that they were the cause of. You know, they're still having the pace. So, even in the Lincoln case itself, the court also talks about the cost causation isn't just about who the facilities were built for. It's who those facilities before and who benefits from it. So, that's just part of the analysis. That's always part of the cost causation analysis, but the commission also talked about in order 2003. How this court had affirmed the commission. Point in an earlier precedent, and then, and so it was talking about it or 2003 about the broader benefits. For example, at 2003, a paragraph 584, the commission talks about how its approach also recognizes the reliability benefits. Of. And more competitive power markets that result from a policy that facilitates the interconnection of new generation facilities and that this approach. Was fully supported by the court and energy 319 F3 at 543 to 44. So. The specific not only do these. Network upgrades actually just benefit the system, because there, it creates more reliability, but it also helps create more generation getting onto the system, which is just innately beneficial. And the court has affirmed our cost causation determination to have reimbursement. In these services, anything to just kind of rectify higher. Errors explaining them away. I don't know that the commission has done anything. I didn't check into that. I apologize. I'm not sure. What the commission could do, these are existing contracts and the commission made a mistake. I guess parties could like. Making something beyond just. Conceding in orders and saying, we're correcting that commission clarified what order 2003 means. And it's in the American beach order and it's going to always follow that precedent going forward. And so a rulemaking. Isn't required to do. We impose the rulemaking requirements. It's just the rulemaking requirements exist and the commission's alternative was to continue to follow. What it permanently found is incorrect precedent. Thank you. Thank you here for counsel for intervener edge. Mr. O'Connor. Thank you. Good morning. Please the court Connor on behalf of solar. I'd like to start with something that council was asked and responded to. And I'm just paraphrasing here, but council was essentially asked what happens. To these projects, if, if. We were to vacate these orders. And I think council responded something, something to the effect of. I think that really gets to the heart of order 2003 and what the commission there was trying to address. And it's exactly why their interpretation border 2003 would erect barriers to entry for new generation. That is countered to both the text and the purpose of the order. And also, like, I will also addressed to the senior questions about benefits. And explain how this does, or would, in fact, likely benefit system. But starting with the purpose. As this court explained in energy versus. Prior to order 2003. Utilities that generation and transmission. Would often favor their own generation by interfering with the interconnection of competing projects that they did not own. So, order 2003 basically creates a even playing field. And it sets out a standardized process that all transmission providers and effective systems have to abide by. To prevent them from imposing onerous or burdensome or expensive requirements that would either deny, excuse me, delay, or deny access to their systems. And 1 of those requirements is this reimbursement role here. So, Duke's argument that order 2003 is voluntary that it can abide by it, or it cannot. It's inconsistent, I think, with. Suppose I agree with that. Let's get down to the brass tacks. Why does it make sense in this case for. Effective system customers to have to pay to reimbursement to your client or to American beach. Yeah, I think there's, there's 2 responses to that. 1st, as council pointed out, there are benefits. We don't know because there's no record, frankly. But you can presume some benefits from the types of upgrades that are being effectuated here. For instance, replacing wooden poles with steel poles. We're all very familiar with wildfires and the extreme weather that has happened to take down transmission lines across the country. That is an upgrade that would presumably benefit system. Now, Duke never contested as to whether it made that point. So my client never had the chance to respond. But another benefit from these types of projects. You know, I think judge Wilkins, not to directly disagree with something I believe you said, but you said. By definition, they aren't benefiting. Duke is not benefiting by definition of being an effective system. And so not only is that not right with respect to these particular upgrades. But, in fact, there are inter regional power transfers all the time. And Duke is well aware of that. And I can't really don't know if it's this Duke or 1 of their affiliates. But during winter storm last year, when power was knocked out in the TVA region and in Duke service territory. It was generators and P. J. M. who actually shipped power across. Regional lines to make sure that more people didn't lose power in those regions. And there have been. Very extensive for cases about that. And so there are benefits. Or we believe there are benefits, and I think that goes to the question you have here. There are what we've been talking about at length, which is what was Duke's obligation to establish that those benefits, which the commission in order paragraph 21 of order 2003 said a crew. They said transmission system benefits network up is called an upgrade for a reason. It is presumed to benefit the system. What's happened here? Duke has tried to articulate this case as if we're requiring Duke to pay for something to pay for something on their system. What's actually happening is my client and the other interconnecting generators are fronting the cost to improve Duke system. And then the policy permits Duke to reimbursing over time. Now, in order 2003, 2003, be paragraph 56. The commission laid out a fairly extensive showing that Duke would have to make it's a rebuttable presumption, right? Which paragraph? I believe it's order 2003 be paragraph 56. It's a rebuttable presumption. Nobody says there's explicit language that says, look, you can seek an exception or a deviation from these requirements. If you believe that it's not good for your native load, which is just Burke word for your customers. It goes on at length about the transmission provider must explain the facts of the case, the assumptions on which it's calculation is based and provide evidentiary support. And it says it bears the full burden of showing that such proposal is just and reasonable and is appropriate under the circumstances. There's no, I mean, the, the bald recitation of the fact that you're an effective system. That will be bearing the cost of the upgrades. If it's self-taught illogical, yes, we know that. That you did not, we're not the, but for a cause of these upgrades, that's why you're an effective system. Kirk knew that when it issued the order, if you want to seek a deviation for it, you're welcome to like everybody else. You have to plead the facts. And I would reference 1 of the cases cited, and I'm sorry, I'm sure I can find this exact citation. It's the Midwest ISO case. It's cited in the briefs and I can permit me. I can find the actual the 1 from 2007. Of course, yes, your honor. That's right. Let me have it here. Yes, 20 for. 120 for 6106. And I would point to that case, because the transmission system in that case, saw a deviation that that case is really about which of 2 tariff provisions applies an earlier time or a later in time. But an underlying fact in that case is that the transmission system had sought and obtained a deviation from the reimbursement requirement. And I think the deviation said, henceforth, 50% of the costs will be borne by these people and 50% will be borne by these people. And I think what it illustrates is that how how, based on the basically. I'm sorry, my time is long since expired, so please continue. Thank you. I think my point here, though, is 5050 is a conclusion that is that you could only derive through the use of facts and assumptions to a portion out which benefits apply to this person and which apply to this person. Showing as to which benefits apply to which party or accrue to which party and they don't even attempt to do that. So, of course, my client and never had the opportunity to respond and point out that. In fact, some of these benefits clearly would accrue to Duke system. Perhaps that's the reason they never made the argument. That is just conjecture. What do we do with the fact? The commission says, well, we did act inconsistently. In these other prior by approving these other prior agreements. But that was then this is now those wrong. And, and, you know, we think that those arguments, those agreements. Shouldn't really be considered because. You know, these, these check the challenge that American beaches, I'm sorry that Duke making now wasn't really made and litigated in those prior agreements proceedings, but see Baltimore gas. What are we supposed to do with that? Yeah, I think I'm. I would say 2 things. This gives me an opportunity 1st to point out. There's been some some parties up here seem to be contesting whether this has been a long standing policy. And I think you pointed to an instance in which Duke itself has acknowledged this policy. I would also point you to page 8 of the intervener in a footnote where we cite multiple instances in which Duke and Duke's affiliates, they own power companies across multiple service territories. Have repeatedly filed interconnect, excuse me, effective system agreements with this reimbursement language. So, and so to your specific and in fact, you had referenced 1 of their quotes, they've got another 1 here and effective system operator, just like a transmission provider. Must provide the 20 year lump sum reimbursement to refund any remaining balance, even if no transmission service was taken. And so your question here is about what to do with. These 3 letter orders and how to treat them. I think counsel had it right, which is there's no principle of administrative law that I'm aware of that says that was required to continue perpetuating its mistakes. In fact, returning, excuse me. Rightfully returning and applying a long standing rule. Is a hallmark and obligation of reason decision making. Departing from a long standing rule, because you had a case where you also departed from a long standing rule. I think would be arbitrary and capricious under under these courts rule under this court's precedent. And not only that. As for council pointed out. Order 2003 was a notice in common rulemaking. Duke's contention that the substance of that rule was reversed by 3 letter order uncontested letter order adjudications. Runs afoul of, like, multiple different administrative law principles. Well, I don't think that that's their argument. Their argument is just simply that like cases should be treated the like. So, in Baltimore gas stands. And, you know, their case is like those 3 cases in the commission. As an explain why it's not treated the same as those 3 cases. And I, with respect to your honor, I think it does explain why and I think it points out that those cases. Contravene an existing rulemaking and because an adjudication issued with an unreasoned letter order. Cannot overturn a notice in common rulemaking. They're obliged by administrative law principles to apply the rule. And even if that weren't the case, I think, for us, provide a reason to explanation for why it's interpretation. Even even assuming argue and know that that these letter orders could have overturned a notice in common rulemaking. I think it provides a reason to explanation why it's reaching. It would be creating or establishing a new policy in this case, which is to say, you know, what we've read those. They're inconsistent with what order 2003 says, because it found that effective systems have an incentive to frustrate. It's like the systems like, dude, have an incentive to frustrate new generation. And we think here, it makes sense to have a reimbursement requirement for that reason. And if Duke would like to plead itself out of that reimbursement requirement, it's welcome to put forward facts that would do so. The facilities were located elsewhere, but there were upgrades actually on Duke's system. And so do you believe FERC was evaluating whether the solar facilities or the upgrades on the system benefited Duke's customers? Or is there a difference? I'm sorry, I apologize. Would you mind restating the question? Yes, so you have the solar facilities, they're located elsewhere, but the upgrades are on Duke's system. So when FERC is doing this evaluation, do you think that they're evaluating benefits in terms of the solar benefits located elsewhere or Duke's upgrades on its own system? Or is there some difference in that? You're saying if they were to request a deviation, I'm sorry. When you're saying if Duke have requested a deviation and substantiated it with evidence, how would FERC have evaluated it? Well, just when they're suggesting that there should be reimbursement, is there consideration that some of the solar facilities are located elsewhere? Okay, yeah. So in Order 2003, the Commission advances a clear understanding that projects located elsewhere can have impacts on other systems. But there are many reasons for the Commission's policy. I think, first of all, in this country, for most of this country's history until the 1970s, we had a utility model. Every utility had its own service territory, and good luck going up against your utility. What happened, though, was there started to become a competitive generation industry in this country. And FERC found in Order 2003 and in Order 888 in, I believe, 1996, and prior to that, that competitive generation increases energy supply, it promotes reliability, and it can lower wholesale power prices. So we found that there are really important nationwide reasons for promoting the development of this industry. But a corollary is, okay, how do you promote a competitive industry when we have incumbent utilities who basically have every incentive to frustrate the people who are trying to compete with them? And so I think, to your broader point about benefits, I think they were both recognizing that there are systemic nationwide benefits undergirding its policy. But to the extent an effective system would not meet those benefits or would not – or its customers would be harmed by them, it gave Duke an opportunity – it gave all effective systems an opportunity to make a showing that, in this case, the harm suffered by its customers essentially would exceed the benefits that would otherwise accrue from this policy. I hope that answers your question. I'm happy to give it another shot. Thank you. We have your question. All right, Council for Petitioner, we'll give you three minutes for rebuttal. Thank you, Your Honor. Briefly, responding to Your Honor's question, at GA 211, paragraph 38, FERC says that the arguments in the Edgecombe complaint are outside this proceeding. I took a look again at what we filed there. I think it's fair to say the arguments were not as fully developed as they were as we went through the American Beach and the Edgecombe proceedings. We say on one page the language that you quote. On the next page, we say nothing in Order 2003 for a strict freedom of contract. So I think it's fair to say that in that motion dismissed, we hadn't fully developed the arguments that we had in the orders actually on review. And that brings us to Baltimore Gas, is that we and our affiliates don't have some APA obligation to be – to make consistent arguments in every proceeding we participate in. But FERC, when it issues orders, has to treat like cases alike. They say, oh, you know, this is just three orders. Three orders is how many there were in Baltimore Gas. They have not pointed to a single affected system operating agreement without this reimbursement requirement that they've ever, ever rejected. Baltimore Gas was a circumstance where the orders that were cited were the only orders, and they all favored the petition. But here, FERC is saying, well, we have dozens and dozens of orders that had reimbursement requirements. And yes, you can cherry pick three that we approve that did not, and those were wrong. But reasoned decision-making isn't like perpetuating an error. It's explaining that those were wrong and then doing the right thing here. So this isn't really Baltimore Gas. I want to echo that, too. I mean, you're trying to ride this Baltimore Gas horse much too much. It doesn't get you there. It just doesn't. It's a completely different case. Here you have many, many orders, as Judge Wilkins has said, perfectly inconsistent with your position. But more importantly, the rule that's applicable here is perfectly inconsistent with your position. You're not challenging the rule, and the rule makes it clear that you have the burden to show no benefits if that's what your argument is, and you have not met that. So I don't know how you can possibly prevail in this situation. Baltimore simply is off point. It really is. What is your agency supposed to do if they have hundreds of cases that follow the rule consistently and no one is claiming otherwise, and three times they fouled up? Okay, they did what they did. We fouled up three times, but the rule is still the rule, and you're not challenging the rule. We certainly have a different reading of the rule, and I very strongly disagree. They have zero, zero, zero examples of them ever, ever rejecting a single affected service operating agreement for failure to have reimbursement. Not dozens, literally zero. The only ones, the examples they cite are entities, including some of our affiliates, that voluntarily assume the obligation to pay reimbursements. That is entirely consistent with our position. Nobody has ever argued that an affected system can't because it's of its own interest. The rule is clear in what it requires. Yes, Your Honor. The rule requires what they're saying, and the preamble is absolutely clear, and the preamble counts, and it's inconsistent with your position, and all they're saying is we're applying the rule, and you're right. We missed it three times, but there are many times where the parties affected, whether they did it voluntarily. I don't even know what that means. It's a rule that says you have to do X, and then you self-servingly say, well, I'll do it voluntarily. But the fact that you did it, and there was a rule that required it, that's what FERC is saying. There has been consistent practice that follows the rule. That kills your position. Well, I strongly disagree with it. But taking a clue from you, I would, if I could, I would make it to talk about cost causation was a completely separate argument. It doesn't rely on Baltimore gas. Everything that FERC and Edgecombe told you this morning, that's the exact position that was urged by Lincoln. That's the exact position that the Seventh Circuit rejected in Illinois Commerce Commission. And in Lincoln, FERC stood at this podium two months ago and said, pointed to the Seventh Circuit, said we can't rely on these general system benefits to swap cost causation. They've got this point where once in a while there might be some problem in our system, we might draw some energy from PJM. That's exactly the argument. What FERC said in that case is I'm not remembering it. We're following the rule regarding legacies. That's what they said. No, what they said. Just following the rules. No, because Lincoln had argued that there was going to be system-wide benefits. Respectfully, what FERC's position was in that case is there's a rule regarding how we treat legacies, and this person, this group fits it, and that's that. We're going to follow that rule. What FERC said in that case is that cost causation is a requirement of the Federal Power Act. And so we have to honor that. Here they are flipping it completely on its head. They're saying unless you make some heightened showing that these upgrades are somehow going to hurt customers by degrading our system or something, we're going to give cost causation zero weight. This case about challenging the efficacy of 2003, the rule applies, right? Sorry? The rule applies, right? You're not challenging the legitimacy of Order 2003, are you? We have a different reading of Order 2003, but we have two independent arguments, even if your honors do not agree with our Order 2003 argument. I understand that your honor doesn't agree with our Baltimore gas argument. The other argument is under the Federal Power Act and standard APA decision-making, they have to address reasonably a relevant aspect of the problem. They didn't address reasonably at all cost causation. They basically said cost causation is going to be completely irrelevant unless you make some unspecified heightened showing. You're trying to challenge Order 2003. Is that what you're trying to do? Is that how this case is now framing up? Absolutely not, your honor. Although I will say that the principle that you shouldn't read Order 2003 to conflict with what this court just said a couple of days ago, what the Federal Power Act requires as a matter of avoidance is certainly open to this court. That wouldn't at all challenge Order 2003. That would just be a reading Order 2003 not to conflict with the Federal Power Act, which would be necessary. If you're in their reading, Order 2003 is correct. The cost causation is presumptively irrelevant, which is contrary to what this court said a couple of days ago the Federal Power Act requires. Thank you. Take your case under advise.
judges: Wilkins, Childs, Edwards